**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LARRY FRANCIS WILLIAMS      *
                                  *
        v.                    *   Civil Action WMN-10-3582
                                  *
WICOMICO COUNTY BOARD      *
OF EDUCATION <u>et al.</u>           *

    *     *     *     *     *     *     *     *     *     *     *     *

<u>**MEMORANDUM**</u>

Pending before the Court is a motion to dismiss this action filed by Defendants Wicomico County Board of Education, John Fredericksen, Stephanie Moses and Thomas Field. ECF No. 11. The parties have fully briefed the motion and it is ripe for adjudication. Upon consideration of the facts, applicable law and legal arguments advanced by the parties, the Court will grant in part and deny in part Defendants' motion.

## I. BACKGROUND

Plaintiff Larry Williams, an African-American man, was a social studies teacher at the Wicomico Alternative Learning Center (Learning Center), a now-defunct alternative public high school for students with severe disciplinary histories. Defendant Wicomico County Board of Education (Board) oversaw the Learning Center. John Fredericksen is the current Superintendent of the Wicomico County school system. Stephanie Moses is the school system's Director of Human Resources, and

Thomas Field was the interim Superintendent from July 2006 to July 2008, after which the Board hired Dr. Fredericksen.

Mr. Williams joined the Learning Center in August 2006.[1] In May 2007, Mr. Williams was involved in a physical altercation with a student at the Learning Center. Consequently, Mr. Williams was placed on administrative leave from his teaching position, but he continued to receive his pay. The Wicomico County Department of Social Services Child Advocacy Center (Social Services) investigated the altercation and issued a finding "indicating" physical child abuse. The finding was forwarded to the Wicomico County State's Attorney's Office, and Mr. Williams was charged with second degree assault. On September 11, 2007, the Board notified Mr. Williams that Mr. Field had recommended his termination. Mr. Field also penned a letter to the Assistant State Superintendent at the Maryland State Department of Education requesting that the state revoke Mr. Williams' teaching certificate. On October 8, 2007, Mr. Williams was suspended indefinitely without pay. He was never afforded an opportunity to appeal the Board's decisions.

In December 2007, Mr. Williams was tried for second degree assault in the District Court of Wicomico County. He was acquitted. In turn, Social Services formally revised its

---

[1] The facts recited herein are as alleged by Mr. Williams and assumed to be true for purposes of this motion.

finding of "indicated" child abuse to "ruled out" child abuse, and it expunged its record of the incident pursuant to Maryland state regulation. As defined by regulation, a finding of "ruled out" means that the alleged abuse "did not occur." COMAR 07.02.07.02B(38). One day after Social Services amended its finding, the Board modified Mr. Williams' status to administrative leave with pay retroactive to November 1, 2007. In April 2008, Mr. Field notified Mr. Williams that his employment contract with the Board would not be renewed for the following school year. In May 2008, the District Court of Wicomico County ordered that all records of the criminal charge be expunged.

Shortly thereafter, Mr. Williams began applying for new teaching positions in other Maryland counties. Despite receiving some positive responses, he was unsuccessful. For example, officials at Prince George's County school system expressed interest in pursuing Mr. Williams, but his application stalled when he was asked, prior to an interview, why he left his position in Wicomico County. Later, Mr. Williams interviewed at Montgomery County school system in December 2008, after which the principal of Gaithersburg High School personally recommended him for a position in her school. Nonetheless, Mr. Williams was told that the school's human resources department

"would not release him," and Mr. Williams was never offered a position.

Unable to obtain a teaching position, Mr. Williams looked elsewhere for work. He applied to be a bus driver with Somerset County schools in late 2009, but he was informed via letter from the Director of Facilities and Transportation that the school would not hire him. In a letter dated September 16, 2009, the transportation director explained that "upon researching your references, I was made aware of a physical confrontation which involved you and a student while you were employed in Wicomico County." Mr. Williams had not previously disclosed the incident to Somerset County schools.

Mr. Williams now claims he is unable to find work in any school system, either as a teacher or in any other capacity, because Defendants have willfully and maliciously spread false information regarding the alleged assault for which he was found not guilty. He further alleges Defendants' conduct is motivated by racial discrimination. To that end, Counts I through V of Mr. Williams' Complaint allege Defamation, Invasion of Privacy, Tortious Interference with a Prospective Advantage, Intentional Infliction of Emotional Distress, and Negligence, respectively, and they are lodged against all four Defendants. Count VIII also relates to all four defendants and claims violations of the Maryland Declaration of Rights. In contrast, Counts VI and VII

4

relate to Dr. Fredericksen, Ms. Moses and Mr. Field in their personal capacities only and allege violations of the Fourteenth Amendment and 42 U.S.C. § 1981. Defendants now move to dismiss all eight counts and argue both that some of Mr. Williams' claims are barred by the 11th Amendment and principles of sovereign immunity and that Mr. Williams has failed to allege facts sufficient to state plausible claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "detailed factual allegations," but "naked assertions, devoid of further factual enhancement" are insufficient. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 St. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Likewise, unadorned accusations and rote recitation of a cause of action's elements fail to meet the requisite pleading standard. Id.

Instead, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Id. In this context, the plausibility standard demands more than the mere possibility of a defendant's liability. Id. To wit, "[a] claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating the sufficiency of a pleading, courts are required to construe all facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

**III. ANALYSIS**

Mr. Williams' Complaint includes eight causes of action, some predicated on Maryland state common law and others based on federal law. The parties' legal memoranda reflect a level of confusion regarding which causes of action apply to each of the Defendants. Given the interplay between state and federal law as applied to this case, the Court will address the federal claims first to simplify the analysis.

**A. Counts VI and VII – 42 U.S.C. § 1983: 14th Amendment and 42 U.S.C. § 1981**

As an initial matter, the prayers for relief following Counts VI and VII list only Dr. Fredericksen, Ms. Moses and Mr. Field in their personal capacities. Mr. Williams names neither the Board nor the individuals in their official capacities, so the counts are not barred as actions beyond the scope of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "neither a State agency nor its officials acting in their official capacities" may be sued under

6

Section 1983).  Rather, these are personal-capacity claims.

"Personal-capacity [claims] seek to impose personal liability

upon a government official for actions he takes under color of

state law."  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

Count VI alleges a deprivation of equal protection and due

process under the Fourteenth Amendment.  Though not exceedingly

clear from the Complaint, Mr. Williams' Fourteenth Amendment

claim appears to include two different theories.  First, his

Equal Protection theory posits that the personally named

Defendants each intentionally treated him unequally because he

is African-American, and that they treated a Caucasian teacher

with a similar background differently.  Compl. ¶ 37.  The

alleged disparate treatment to which Mr. Williams refers

apparently includes both the disciplinary actions taken against

him while he was employed at the Learning Center and the later

dissemination of allegedly false information about him to

prospective employers.  As for Mr. Williams' second theory under

the Fourteenth Amendment, the Court views it as one claiming a

deprivation of his liberty right to engage in his chosen

profession, and of his right to due process because he was not

given an opportunity to defend his reputation.

Count VII, in contrast, alleges race discrimination under

42 U.S.C. § 1981.  Under this Count, Mr. Williams sets forth an

argument similar to his Equal Protection claim.  He submits that

Dr. Fredericksen, Ms. Moses and Mr. Field "treated [him] differently due to his race . . . with respect to their investigation, suspension, non-renewal of his contract, and publication of expunged information and falsehoods." Compl. ¶ 82. Defendants attack both counts on three grounds by arguing: (1) Defendants were not "state actors" as required by Section 1983; (2) Defendants enjoyed qualified immunity; and (3) Mr. Williams failed to allege sufficient facts.

Section 1983 only provides a cause of action in personal-capacity lawsuits when government officials act as state actors "under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1160 (4th Cir. 1997). Officials act as such when their "decisions represent the official policy of the local governmental unit," and when they "speak with final policymaking authority for the local governmental actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Whether an official acts under color of state law is a question of law to be decided by the court. Rodriguez v. Smithfield Packing Co., Inc., 338 F.3d 348, 354 (4th Cir. 2003).

In this case, Defendants argue the authority to suspend Mr. Williams, to refuse to renew his contract, or to take disciplinary action against him is vested exclusively with the Board. Consequently, they argue Dr. Fredericksen, Ms. Moses and Mr. Field could not have been acting under color of state law

8

because they were not the final policymakers within the school district.

Based upon the memoranda before the Court, the delineation of authority between school officials and Maryland county boards of education is unclear at this time. For example, COMAR 13A.07.02.01, which provides the language used in Maryland state teacher contracts, explicitly states that all such contracts are made between the teacher and the county board of education. This may indicate that only the Board had authority to refuse to rehire Mr. Williams. In contrast, Md. Code Ann., Educ. § 6-202(a)(1), provides that "[o]n recommendation of the county superintendent, a county board may suspend or dismiss a teacher."[2] This may indicate that the superintendent of the school is vested with discretion on matters of discipline.

In any case, Mr. Williams' claims are not based exclusively on the official disciplinary action taken against him. His claims extend to the alleged actions of the personally named Defendants during and after his suspension and employment. Thus, construing all facts in favor of Mr. Williams, the Court

---

[2] Md. Code Ann., Educ. § 6-202(a)(2) also provides that, "[b]efore removing [a teacher], the county board shall . . . give [the teacher] an opportunity . . . to request a hearing." Mr. Williams alleges he repeatedly requested and was denied hearings in response to the Board's various disciplinary actions. Though Mr. Williams does not predicate his due process claims on the Board's alleged failure in this regard, the Court is troubled by the Board's apparent indifference to Mr. Williams' appeals.

finds that Mr. Williams' Complaint sufficiently sets forth a plausible scenario in which Dr. Fredericksen, Ms. Moses and Mr. Field acted under color of state law when they allegedly engaged in the various activities about which Mr. Williams complains. See Jones v. Frederick Cnty. Bd. of Educ., 689 F. Supp. 535, 540 (D. Md. 1988) (denying in part defendants' motion for summary judgment in Section 1983 action against school superintendent and principal).

Next, Defendants argue they are protected by the doctrine of qualified immunity. The doctrine of qualified immunity operates when the officials' "conduct does not violate clearly established constitutional rights of which a reasonable person would know." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[Q]ualified immunity will be upheld on a Rule 12(b)(6) motion only when the immunity is established on the face of the complaint." Moxley v. Town of Walkersville, 601 F. Supp. 2d 648, 664 (D. Md. 2009) (quotations and alterations omitted). To determine whether qualified immunity applies, the Court must engage a two-step analysis. Id. at 665.

> First, the court must decide whether a constitutional
> right would have been violated on the facts alleged.
> Next, assuming that the violation of the right is
> established, the court must consider whether the right
> was clearly established at the time such that it would
> be clear to an objectively reasonable officer that his
> conduct violated that right. The plaintiff bears the
> burden of proof on the first question . . . and the

defendant bears the burden of proof on the second question.

Id. (quotations and alterations omitted.)

As detailed above, Mr. Williams alleges the personally named Defendants discriminated against him on the basis of his race and knowingly conveyed falsehoods to his prospective employers.  If true, these actions would constitute violations of Mr. Williams' constitutional rights.  With the first prong of the analysis satisfied, the burden of proof falls to Defendants on the second prong.  At this early stage in litigation, it is unclear whether the rights allegedly violated were clearly established, though the Court notes that Mr. Williams does not present an exceedingly novel theory of liability.  As such, Defendants cannot establish qualified immunity on the face of the Complaint.

Last, Defendants challenge the sufficiency of Mr. Williams' allegations under the enhanced pleading standard announced in Twombly and Iqbal.  As noted above, Mr. Williams sets forth two theories of liability under Count VI.  On the basis of the Complaint, his clearest argument is one for deprivation of due process premised upon a liberty interest in his reputation. That claim stems from Defendants' alleged publication of falsehoods regarding the Board's decision not to rehire him. This type of claim applies "where a person's good name,

reputation, honor, or integrity is at stake because of what the government is doing to him." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007) (citations omitted). To state this type of claim under the Due Process Clause, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Id. (citations omitted).

Mr. Williams alleges Dr. Fredericksen and Ms. Moses spread false information about Mr. Williams' experience at the Learning Center and discussed Mr. Williams' expunged record with his prospective employers. Compl. ¶¶ 56-57, 59. He further alleges that their actions sullied his reputation such that he was unable to obtain another teaching job. Compl. ¶ 57. It is unclear from the face of the Complaint, however, what role Mr. Field played in the dissemination of false information and consequent deprivation of Mr. Williams' reputation-based liberty interest.

Nevertheless, Mr. Field need not be dismissed from the case because Mr. Williams' Equal Protection argument under Count VI pertains to events occurring during Mr. Field's tenure. To establish a violation of the Equal Protection Clause, a plaintiff must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the

unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, Mr. Williams alleges that during the school's investigation of his physical altercation with the student, Defendants—presumably Mr. Field and Ms. Moses—treated him more harshly than at least one similarly-situated Caucasian teacher, and that the difference was motivated by his race. See, e.g., Compl. ¶ 37. Here, too, the Complaint is somewhat ambiguous, at least insofar as it is unclear how the actions of Dr. Fredericksen, who was not hired until after the school's investigation, violated Mr. Williams' Equal Protection rights. Nevertheless, as Mr. Williams' various theories of liability capture all personally named Defendants in at least one aspect, the Court will decline to dismiss the allegations against them at this time.

Count VII survives for similar reasons. To state a claim premised upon 42 U.S.C. § 1981, a plaintiff must show three elements: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute. Baltimore-Clark v. Kinko's, Inc., 270 F. Supp. 2d 695, 699 (D. Md. 2003). As outlined above, Mr. Williams alleges each of these elements in various ways against each of the personally named Defendants. See Compl. ¶¶ 37, 57 &

82.  Consequently, the Court will deny Defendants' motion to dismiss Count VII as well.[3]

### B.    Count VIII – Maryland Declaration of Rights

Count VIII alleges violations of Articles 19 and 24 of the Maryland Declaration of Rights.  These articles are read in pari materia with the Fourteenth Amendment.  See Jackson v. Dackman Co., 956 A.2d 861, 873 (Md. Ct. Spec. App. 2008) ("The 'law of the land' in Article 19 is the same due process of law required by the fourteenth amendment."); Doe v. Dept. of Public Safety and Corrections Servs., 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009) ("[I]t is well established that Article 24 [of the Maryland Declaration of Rights] embodies the same equal protection concepts found in the Fourteenth Amendment to the U.S. Constitution.").  Mr. Williams lodges Count VIII against Dr. Fredericksen, Mr. Field, Ms. Moses and the Board.

Defendants apply their arguments against Counts VI and VII to Count VIII.  As the Court will deny Defendants' motion with respect to Counts VI and VII against the personally named Defendants, it will also deny their motion with respect to Count VIII, at least insofar as Count VIII relates to Dr.

---

[3] The Court will deny Defendants' motion with respect to Counts VI and VII because, at this early stage of litigation, Mr. Williams needs only to allege a scenario under which Defendants are plausibly liable.  The legal standard at future stages of litigation is higher, however, and Mr. Williams may succeed only if his theories of liability against each Defendant are more precisely articulated and developed through discovery.

Fredericksen, Mr. Field and Ms. Moses.[4]  Unlike Counts VI and

VII, however, Count VIII also names the Board, and the Court

must therefore address Defendants' additional arguments

regarding the Board's possible immunity from suit under the

Eleventh Amendment and the doctrine of sovereign immunity.

Maryland county boards of education are state agencies in

Maryland and therefore insulated from most lawsuits under the

doctrine of sovereign immunity.  Lewis v. Board of Education of

Talbot Cnty., 262 F. Supp. 2d 608, 612 (D. Md. 2003).  State

agencies may only be sued where the state has voluntarily waived

its sovereign immunity and consented to suit.  Id.  Mr. Williams

argues that § 5-518(c) of the Maryland Courts and Judicial

Proceedings Article does just that; specifically, he claims

Maryland has waived its immunity from suit against county boards

of education for claims up to $100,000.[5]  There may be some merit

to Mr. Williams' claim, but the law is currently in flux.

In 2009, the Maryland Court of Appeals held that the Board

of Education of Baltimore County could not assert a defense of

---

[4] The dichotomy between personal-capacity and official-capacity
lawsuits applies only to the federal claims filed under 42
U.S.C. § 1983.  As the remaining counts are based on state law,
the Court will refer to Dr. Fredericksen, Mr. Field, and Ms.
Moses as the "individually named Defendants" for the remainder
of this memorandum to reflect the difference in law between the
state and federal claims.

[5] Md. Code Ann., Cts. & Jud. Proc. § 5-518(c) provides: "A county
board of education may not raise the defense of sovereign
immunity to any claim of $100,000 or less."

sovereign immunity for a claim for $100,000 in an action alleging violations of the federal Age Discrimination in Employment Act. Bd. of Educ. of Baltimore Cnty v. Zimmer-Rubert, 973 A.2d 233, 242 (Md. 2009). The Zimmer-Rubert court also expressed its view that the waiver contained within Md. Code Ann., Cts. & Jud. Proc. § 5-518(c) extended to the board of education's Eleventh Amendment immunity. Id. at 242-43; see also, id. at 241 n.6 (acknowledging the potential conflict between Eleventh Amendment immunity in federal court and common law principles of sovereign immunity in state court, but deciding that "[the court] need not resolve that conflict in this case, for [the court] conclude[s] that the plain language of § 5-518(c) of the Court and Judicial Proceedings Article waives the Board's governmental immunity, including its Eleventh Amendment immunity, to claims for $100,000 or less"); but see, BEKA Indus., Inc. v. Worcester Cnty Bd. of Educ., 18 A.3d 890, 907 (Md. 2011) (holding that Zimmer-Rubert did not extend to contract claims against a county board of education, because Zimmer-Rubert only addressed the applicability of § 5-518 to a "tort or insurable claim, such as those for personal injury, and for claims arising from alleged employment law violations") (internal quotations omitted).

Federal courts addressing the question after Zimmer-Rubert have reached varying conclusions. See Lee-Thomas v. Bd. of

16

_Educ. of Prince George's Cnty_, Civ. No. CBD-08-3327, 2010 WL
2365673, at *1, *3 (D. Md. June 8, 2010) (relying on _Zimmer-_
_Rubert_ to hold that § 5-518(c) waives Eleventh Amendment
immunity to federal claims in federal court); _but see_ _Savoy v._
_Charles Cnty Pub. Sch._, Civ. No. AW-09-788, 2010 WL 481345, at
*3 (D. Md. Feb. 5, 2010) (holding the language of § 5-518(c)
insufficient as a waiver of Eleventh Amendment immunity to
federal claims in federal court).  This Court is inclined to
agree with _Zimmer-Rubert_'s thoroughly researched and reasoned
analysis, which was later endorsed by this District in _Lee-_
_Thomas_.  Nevertheless, _Lee-Thomas_ is currently under review at
the Fourth Circuit Court of Appeals, and oral argument in that
case is scheduled for September 2011.  Because discovery in this
case may well extend through the Fourth Circuit's decision, the
Court will deny the Defendant Board's sovereign immunity
contention at this time.  The Court reserves the right, however,
to revisit the question if and when the Court of Appeals
provides additional clarity.  Consequently, Count VIII of the
Complaint will not be dismissed.

### C.   Counts I through IV – Intentional Tort Claims

The first four counts of the Complaint allege intentional
torts against the Board and each of the individually named
Defendants: Defamation (Count I); Invasion of Privacy (Count
II); Tortious Interference with a Prospective Advantage (Count

III); and Intentional Infliction of Emotional Distress (Count IV). As to all four intentional tort claims, the Board is immune for liability. A county board of education can be liable for the intentional torts of its employees only when such torts are committed by employees acting within the scope of their employment. Hunter v. Bd. of Educ. of Montgomery Cnty, 439 A.2d 582, 587 n.8 (Md. 1982). Intentional torts fall within the scope of an employee's employment when they are carried out for the employer's benefit. Id. Here, Mr. Williams does not allege the individually named Defendants acted for the Board's benefit. Rather, he claims they maliciously sullied his reputation by conveying private and false information, acts which by definition would fall outside the scope of their employment with the Board. Consequently, the Court will dismiss Counts I through IV against the Board.

### Count I - Defamation

Count I alleges defamation insofar as the individual Defendants allegedly conveyed false information about Mr. Williams. Mr. Williams has alleged facts sufficient to overcome Defendants' motion on this Count. See Compl. ¶¶ 36, 39, 41 (defamatory communication and false statement); Compl. ¶¶ 43-44 (defendant at fault); Compl. ¶¶ 46-48 (harm). Nevertheless, Defendants argue that Count I is barred by Maryland's statute of limitations because Mr. Williams did not timely attach a civil

information report to his otherwise timely-filed state court Complaint.

Maryland has a one-year statute of limitations on defamation actions. Md. Code Ann., Cts. & Jud. Proc. § 5-105. Mr. Williams submits he first discovered the alleged defamatory statements in a letter he received from a potential employer in September 2009. Compl. ¶ 34. On August 10, 2010, Mr. Williams filed his Complaint in the Maryland Circuit Court for Wicomico County. He apparently did not, however, attach a civil information report to his Complaint as required by Md. Rule 2-111 until over fourteen months after his cause of action accrued. The information report referenced in Md. Rule 2-111 is a document summarizing the Complaint's allegations and is used by the court clerk's office for case management purposes. See Md. Rule 16-202(b). Md. Rule 2-111 provides that if a plaintiff does not file an information report, "the court may proceed without the plaintiff's information to assign the action to any track within the court's differentiated case management system." Thus, there is no indication that Md. Rule 2-111's information report requirement is jurisdictional; rather, it specifically contemplates actions in which plaintiffs fail to file an information report. See also Md. Rule 16-202(b)(3) ("The information contained in the information report shall not be used for any purpose other than case management.").

Accordingly, Mr. Williams' failure to file an information report is inconsequential. He filed his Complaint within the statute of limitations and his defamation claim is timely.

Defendants also challenge Count I by arguing that they are entitled to a qualified privilege with respect to employment references made in good faith. Section 5-423 of Maryland's Courts and Judicial Proceedings Article provides that an employer acting in good faith cannot be held liable for disclosing information about the job performance or termination of an employee to that employee's future prospective employers. The statute also provides that if an employee sues an employer for defamation based on the employer's job-performance-related statements made to the employee's prospective employer, then the employee must prove by clear and convincing evidence that the employer acted with actual malice toward the employee or intentionally disclosed false information about the employee. Id. In this case, Mr. Williams does in fact allege that the Defendants intentionally and maliciously spread false information about his job performance, so the good-faith immunity does not apply. See Compl. ¶¶ 41, 43. Mr. Williams may have a high bar to clear to prove his case at trial, but he need not surmount his burden of proof at this stage of litigation.

### Count II – Invasion of Privacy

Count II sets forth an invasion of privacy accusation premised upon the unreasonable publicity of matters concerning Mr. Williams' private life.  Under this tort,

> [o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Furman v. Sheppard, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000). "Publicity," as used here, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Restatement (2d) Torts § 652D, comment a; see also Kipla v. Bd. of Educ. of Anne Arundel Cnty, 460 A.2d 601, 606 (Md. Ct. Spec. App. 1982) (noting that Maryland courts follow the Restatement (2d) of Torts for invasion of privacy claims).  "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.  Furman, 744 A.2d at 588 (alteration in original).  Notably, this tort only applies to "publicity given to true statements of fact."  Restatement (2d) of Torts § 652D, special note.

Defendants argue that the Complaint only alleges the Defendants conveyed information to various private individuals

at Mr. Williams' prospective employers, and not to the public.

Defendants are correct. Mr. Williams does not include any allegations claiming his private information was made a matter of "public knowledge." Nevertheless, Mr. Williams attempts to counter this argument by claiming that he cannot know how broadly Defendants disseminated his private information without access to documents and depositions via discovery. Moreover, Mr. Williams cites Arroyo v. Rosen, 648 A.2d 1074, 1081 (Md. Ct. Spec. App. 1994), for the proposition that dissemination "to only two or possibly three people" is sufficient to establish liability. Arroyo, however, is inapplicable, because the defendant in that case conveyed the plaintiff's private information to a reporter at a general circulation newspaper, which then published stories apparently based in part on the wrongfully disclosed information. Id. No such allegations exist here. Furthermore, even if Defendants conveyed the private information to "numerous school systems and others," Opp'n at 28 n.9, Mr. Williams has set forth no facts indicating the information became a matter of public knowledge. Accordingly, Count II will be dismissed.

### Count III – Tortious Interference with a Prospective Advantage

Mr. Williams' third cause of action is tortious interference with a prospective advantage. In Maryland, this

tort requires a showing of (1) an intentional and willful act, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (4) that caused actual damage or loss. K & K Mgmt., Inc. v. Lee, 557 A.2d 965, 973 (Md. 1989). Defendants argue Mr. Williams has not alleged these elements, especially the third element, with the requisite specificity. Construing all allegations in Mr. Williams' favor, the Court finds his Complaint sufficient for Count III. See, e.g., Compl. ¶¶ 41, 43-47 (intentional act and actual damage); Compl. ¶¶ 56-57 (calculated to cause damage without right or justifiable cause). Mr. Williams satisfies the third element because he alleges Defendants conveyed false and defamatory statements and information that should have been expunged. Compl. ¶ 56. Defendants' motion with respect to Count III will be denied as to the individually named Defendants.

### Count IV – Intentional Infliction of Emotional Distress

The tort of Intentional Infliction of Emotional Distress (IIED) requires four elements: "(1) [t]he conduct at issue must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional

distress must be severe." <u>Manikhi v. Mass Transit Admin.</u>, 758 A.2d 95, 113 (Md. 2000). "The requirements of the rule are rigorous, and difficult to satisfy." <u>Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby</u>, 607 A.2d 8, 11 (Md. 1992) (quotations omitted). The second and fourth elements impose a particularly high burden on the plaintiff. To wit, IIED claims may succeed only when the defendant's conduct was "so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." <u>Borchers v. Hrychuk</u>, 727 A.2d 388, 393 (Md. Ct. Spec. App. 1999) (quotations omitted). Moreover, the outrageous conduct must cause a "severely disabling emotional response," such that "no reasonable man could be expected to endure it." <u>Harris v. Jones</u>, 380 A.2d 611, 616 (Md. 1977) (quotations omitted). As such, "[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." <u>Bagwell v. Peninsula Reg'l Med. Ctr.</u>, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (quotations omitted).

In this case, Mr. Williams argues that "Defendants went on a campaign to destroy his life" when, even though he did nothing wrong, he was suspended without pay, denied a hearing before the Board, denied his job, and stymied in his resulting search for a new job. Opp'n at 31-32. He also argues Defendants' conduct

24

was outrageous because they allegedly lied to his prospective employers, "railroaded [him] out of a job," and "railroaded him out of an entire career." Opp'n at 32. As a consequence, Mr. Williams alleges he has suffered severe bouts of stress, anxiety, depression, sleeplessness, and has developed shingles, constant aches and pains, and uncontrollable clenching of his jaw. Compl. ¶ 66. While Mr. Williams' anger at Defendants' alleged conduct is palpable, he does not allege conduct that is atrocious and utterly intolerable in a civilized community. Moreover, his alleged distress, while considerable, is not so significant that no reasonable man could be expected to endure it, as least insofar as Maryland courts have interpreted the emotional-distress requirement. As such, Mr. Williams' IIED claim will be dismissed. See Manikhi, 758 A.2d at 114-15 (collecting cases holding that claims of, inter alia, depression, physical pain and great mental anguish were insufficient to establish an IIED claim).

### Count V – Negligence

Count V includes three theories of liability. Mr. Williams alleges (1) that the Board is vicariously liable for the negligence of its employees; (2) that the Board negligently trained and supervised its employees; and (3) that the individually named Defendants negligently disclosed information in his expunged records. Mr. Williams includes the third theory

"in the event that [he] ultimately cannot meet the intentional elements of his other tort claims," Opp'n at 34, and because "some of the intentional torts may have led to unintended consequences."  Thus, Mr. Williams included the negligence claims against the individually named Defendants in case he could not prove their conduct was willful and malicious.

Maryland law is clear that county school board employees cannot be held liable for negligence committed while acting within the scope of their employment.  Md. Code Ann., Cts. & Jud. Proc. § 5-518(e).  Unless such employees acted with "malice and gross negligence," id., they are immune from suit, which is to say that Mr. Williams can succeed against the individually named Defendants only if he proves they acted with the level of intentionality required by his various intentional tort claims.  As such, Count V as it pertains to the individually named Defendants will be dismissed.

To establish a claim for negligent training and supervision, a plaintiff must allege five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in training or supervising the employee as the proximate cause of the plaintiff's injuries.  Maryland v.

26

_Jones_, 14 A.3d 1223, 1241 (Md. Ct. Spec. App. 2011). Mr. Williams' Complaint contains no allegations bearing on the third and fifth elements and only cursory allegations bearing on the others. Even a generous reading cannot discern allegations sufficient to maintain this theory, so the Court will dismiss Count V to the extent Mr. Williams seeks to advance a theory of negligent training and supervision.

Nevertheless, Mr. Williams may still pursue a theory of vicarious liability against the Board, subject to the caveat that the Court reserves the right to revisit the Board's sovereign immunity from such suits as this case advances and the law develops. Mr. Williams' allegations are sufficient to establish the individually named Defendants may have been negligent in their disclosure of expunged information while employed by the Board, and while Mr. Williams cannot hold the individually named Defendants directly liable, he may direct his arguments under Count V toward the Board.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. Counts I and III will be dismissed as they relate to the Board. Counts II and IV will be dismissed in their entirety. Count V will be dismissed as it relates to the individually named Defendants and to the extent it seeks to hold the Board liable for negligent training

or supervision.  Counts VI and VII will be allowed to proceed
only against the individually named Defendants as they are named
in their personal capacity.  The Court will issue a separate
order to that end.

_____/s/_____
William M. Nickerson
Senior United States District Judge

July 21, 2011.