**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LARRY FRANCIS WILLIAMS              *
                                   *
          v.                       *    Civil Action WMN-10-3582
                                   *
WICOMICO COUNTY BOARD              *
OF EDUCATION et al.               *

     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM**

Pending before the Court is a motion for summary judgment filed by Defendants Wicomico County Board of Education, John Fredericksen, Stephanie Moses, William Cain, and Thomas Field. ECF No. 78.  The parties have fully briefed the motion and it is ripe for review.  Upon consideration of the facts, applicable law and arguments advanced by the parties, the motion will be granted for the reasons stated herein.

**I.    BACKGROUND**

This case arises out of Plaintiff Larry Williams' parting with his former employer, Defendant Wicomico County Board of Education (Board or school system), as well as the alleged post-termination misconduct of the Board and several of its employees.  Plaintiff, an African-American man, was a social studies teacher at the Wicomico Alternative Learning Center (Learning Center), a now-defunct alternative public high school for students with severe disciplinary histories.  The Board oversaw the Learning Center.  John Fredericksen (Frederickson)

is the current Superintendent of the Wicomico County school system.  Stephanie Moses (Moses) was, at the time of the events giving rise to this action, the school system's Director of Human Resources.  Thomas Field (Field) was the interim Superintendent from July 2006 to July 2008, after which the Board hired Dr. Fredericksen.  Finally, William Cain (Cain) is the Director of Employee Relations for Wicomico County Public Schools.[1]

Plaintiff joined the Learning Center faculty in August 2006.  In May 2007, Plaintiff was involved in a physical altercation with a student at the Learning Center. Consequently, he was placed on administrative leave while the incident was investigated by the Wicomico County Department of Social Services Child Advocacy Center (Social Services).  On August 14, 2007, Social Services completed its investigation and issued a finding that physical child abuse was "indicated."  The report was sent to Field and Moses, and Field instructed Moses and Cain to meet with Plaintiff to discuss his version of the events surrounding the altercation.  That meeting took place on August 22, 2007.  Following the meeting both Cain and Moses concluded that Plaintiff had acted inappropriately and, at the next regularly scheduled meeting of Field's senior staff, all

---

[1] The Court will refer to Frederickson, Moses, Field, and Cain collectively as "Individual Defendants."

those in attendance recommended that Plaintiff should no longer be employed by the Board.  On September 10, 2007, Field met with Plaintiff to inform him that he would be recommending to the Board that Plaintiff be terminated for cause pursuant to Md. Code Ann., Educ. § 6-202.  Field made his recommendation to the Board the following day and the Board sent a letter to Plaintiff informing him of Field's recommendation and his right to a hearing under § 6-202(2).  Plaintiff timely requested such a hearing.  On October 8, 2007, Field informed Plaintiff that he was changing Plaintiff's status from administrative leave with pay, to suspension without pay effective October 16, 2007, pending the outcome of Plaintiff's § 6-202 hearing.[2]

By February 2008, Plaintiff's hearing had been scheduled for March 10, 2008.  The hearing, however, did not occur. Instead, sometime in or around March 2008, an agreement was reached between Field's attorney and Plaintiff's union attorney that Plaintiff's status would be changed from suspension without pay to administrative leave with pay, including all back pay, in

---

[2] Two other events warrant mentioning, but are generally irrelevant to the Court's analysis.  First, in the fall of 2007, Plaintiff was tried in the District Court of Maryland for Wicomico County on the charge of second degree assault for his conduct during the May 2007 altercation.   Plaintiff was acquitted after a bench trial before the Honorable L. Bruce Wade and all records pertaining to that charge were expunged on May 8, 2008.  Second, as a result of the acquittal, Social Services changed its previous finding of "indicated" child abuse to "ruled out."  Social Services informed the Board of the change by letter dated March 4, 2008.

exchange for Plaintiff's resignation at the end of the year.
Plaintiff received all of his back pay, but reneged on his
promise to resign.  On April 14, 2008, Field informed Plaintiff
that his contract would not be renewed at the end of its term,
June 30, 2008.  Because Plaintiff was not yet a tenured teacher,
his contract could be non-renewed at the end of either of his
first two probationary years.  Plaintiff chose not to appeal
Field's decision, and did not think it was illegal.

Through 2008 and 2009, Plaintiff was unable to secure
another position as a teacher.  In late 2009 his application to
be a bus driver with Somerset County Public Schools was declined
after the transportation director became aware of the May 2007
altercation during a phone call with Cain.

Plaintiff filed his Complaint in the present case in
December 2010.  As originally pled, Plaintiff sought relief
under 42 U.S.C. §§ 1981 and 1983, Articles 19 and 24 of the
Maryland Declaration of Rights as well as for common law
defamation, invasion of privacy, tortious interference with
prospective advantage, intentional infliction of emotional
distress, and negligence.  Defendants filed a motion to dismiss,
ECF No. 11, which this Court granted in part and denied in part.
ECF No. 30.  Following the ruling on that motion, Plaintiff's
remaining claims are: (1) defamation against the Individual

Defendants[3], (2) tortious interference with prospective advantage against the Individual Defendants, (3) negligence against the Board, (4) equal protection and due process under 42 U.S.C. § 1983 against the Individual Defendants in their personal capacities, and (5) race discrimination under 42 U.S.C. § 1981 against the Individual Defendants in their personal capacities. The parties have completed discovery and Defendants have now moved for summary judgment.

## II.  LEGAL STANDARD

For the court to grant summary judgment pursuant to Fed. R. Civ. P. 56, the moving party must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  A motion for summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."  Celotex Corp. v. Catrett, 447 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

The "standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

---

[3] Subsequent to the Court's ruling on Defendants' Motion to Dismiss, Plaintiff amended his complaint twice to add Cain as a defendant in all of the surviving claims, and to increase the amount of damages sought in several counts.

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[U]nsupported speculation is not enough to defeat a motion for summary judgment." Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 817 (4th Cir. 1995). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing DeLuca v. Atl. Ref. Co., 176 F.2d 421, 423 (2d Cir. 1949)). To determine the materiality of facts, courts must look to substantive law. See Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

## III. DISCUSSION

At the outset, the Court notes that this case is a prime example of the dangers of wading into the world of federal litigation pro se.[4] While the Court may be obligated to construe a Plaintiff's papers liberally, see generally Carter v. Hutto, 781 F.2d 1028, 1031 (4th Cir. 1986), it may not bend the substantive requirements necessary to defeat Defendants' Motion for Summary Judgment. Jorgensen v. Epic/Sony Records, 351 F.3d

---

[4] Plaintiff was represented by counsel through discovery. This Court permitted Plaintiff's counsel to withdraw on May 9, 2012. ECF No. 73.

46, 50 (2nd Cir. 2003).  Specifically, Plaintiff cannot rely on
conclusory allegations or speculation; as outlined above, he
must offer evidence to show that there is a dispute over
material facts.  Despite Plaintiff's accurate recitation of the
standard governing summary judgment,[5] he has failed to meet his
burden.  Indeed, as Defendants point out in their reply, much of
Plaintiff's opposition is essentially non-responsive to
Defendants' arguments because Plaintiff has copied, almost
wholesale, the argument section from his previous opposition to
Defendants' Motion to Dismiss.  Compare ECF No. 84 (Opp'n) at
18-32 with ECF No. 24 at 15-40.  Perhaps more importantly,
Plaintiff spends considerable time addressing facts related to
the May 2007 altercation, the propriety of his conduct during
that altercation, and Social Services' subsequent investigation

_____

[5] The opening page of Plaintiff's Opposition reads:

> Pursuant to Fed.R.Civ. P. 56, Plaintiff, Larry Francis
> Williams, appearing pro se, submit[s] this opposition
> to the pending Motion for Summary Judgment, on file
> herein, to demonstrate to the Court that there are
> genuine issues of material facts in this case that
> precludes the entry of a judgment as a matter of law.
>
> This opposition is based upon and supported by the
> following Memorandum of Points and Authorities, the
> pleadings and papers on file, the affidavits and
> exhibits attached hereto, and any argument that the
> Court may allow at the time of hearing.

of his conduct.  While these facts may be disputed, few, if any

of them are material to Plaintiff's remaining claims.

## A. Plaintiff's Claims Under 42 U.S.C. § 1983 (Count VI and Count VII)

Plaintiff has pled two counts under 42 U.S.C. § 1983: Count

VI, which alleges that the Individual Defendants violated the

rights guaranteed to him by the Fourteenth Amendment, and Count

VII, which alleges that the Individual Defendants violated the

rights guaranteed to him by 42 U.S.C. § 1981.  ECF No. 68

(Second Amend. Compl.) at 18-21.  Each will be discussed in

turn.

### 1. Count VI – Fourteenth Amendment Claim

The Fourteenth Amendment secures to individuals the rights

of equal protection and due process.  In his Complaint,

Plaintiff alleges that the Individual Defendants "in their

individual capacities, personally deprived Plaintiff of well

established rights, privileges or immunities secured by the U.S.

Constitution, including the Equal Protection Clause, and other

laws of the United States."  Second Amend. Compl. at 18.

Specifically, Plaintiff alleges that "similarly situated white

teachers have been treated more favorably" by the Defendants

than he was.

To prove a violation of the Equal Protection Clause, a

plaintiff must show that he was treated differently than those

who are similarly situated and that that unequal treatment
resulted from intentional or purposeful discrimination.
Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001);
Reaching Hearts Int'l, Inc. v. Prince George's County, 584 F.
Supp. 2d 766, 781 (D. Md. 2008) aff'd, 368 F. App'x 370 (4th
Cir. 2010).  Such intentional or purposeful discrimination can
be shown by "a facially discriminatory act, or by providing
extrinsic evidence such that a discriminatory system designed to
favor one class over another can be inferred from the
circumstances."  Reaching Hearts Int'l, Inc., 584 F. Supp. 2d at
781.

Defendants argue that they are entitled to summary judgment
on Count VI to the extent that it is based on a violation of the
Equal Protection Clause because Plaintiff has not produced any
evidence that he was treated differently than similarly situated
teachers on account of his race.  Defendants' position is
supported by the record.  While the record contains information
about six other teachers identified by Plaintiff, ECF No. 78-2
(Def. Mem.) at 26-29, Plaintiff has failed to produce any
evidence suggesting that (1) these six individuals are valid
comparators,[6] or (2) that he was treated more harshly than they

---

[6] The Court notes that there are a myriad of ways that these six
individuals are distinguishable from Plaintiff, none of which
Plaintiff has addressed.  For example, four of the six were
tenured while Plaintiff was not, four were disciplined for

were.    Moreover, even if Plaintiff had demonstrated that he

was treated differently from similarly situated teachers,

nothing in the record suggests that that treatment was motivated

by Plaintiff's race.   Plaintiff's only attempt to generate a

dispute of fact on this issue is his bald assertion that the

documents upon which Defendants rely have been falsified.   Opp'n

at 9-10.   Plaintiff offers no sworn support for his claim and,

as such, the Court holds that Plaintiff has failed to meet the

burden required to defeat summary judgment.

In addition to alleging a violation of the Equal Protection

Clause, Plaintiff alleges that the Defendants' "unjustified

actions seriously damaged Plaintiff's reputation and standing in

his community so as to foreclose his freedom to take advantage

of other employment opportunities, and interfered with his right

---

inappropriate sexual behavior with students or minors, and none
were disciplined for engaging a student in a physical
altercation as Plaintiff did.   In addition, it appears that the
majority of the group was disciplined at least as severely as
Plaintiff was, or chose to resign or retire, an option that
Plaintiff was also presented.   Moreover, the comparators are all
Caucasian.   Thus, to the extent that Plaintiff sought to show
that his treatment was the result of "a discriminatory system
designed to favor one class over another," Reaching Hearts
Int'l, Inc., 584 F. Supp. 2d at 781, something he seems to
suggest in his opposition, Opp'n at 15 ¶ 25, he is unable to do
so because his treatment alone does not indicate the existence
of any "discriminatory system."   See Sylvia Dev. Corp. v.
Calvert Cnty., 48 F.3d 810, 819 (4th Cir. 1995) (identifying
factors probative of existence of discriminatory system
including, inter alia, "evidence of a consistent pattern of
actions by the decisionmaking body disparately impacting members
of a particular class of persons.") (internal quotations
omitted).

to contract." Second Amend. Compl. at 19. In ruling on Defendants' Motion to Dismiss, the Court construed Plaintiff's claim as "one claiming a deprivation of his liberty right to engage in his chosen profession, and of his right to due process because he was not given an opportunity to defend his reputation." ECF No. 29 at 7. Neither party has suggested that such a characterization is incorrect.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (quoting U.S. Const. Amdt. 14). Only after that threshold inquiry will a court consider whether the State's procedures meet the standards of due process. Id. To establish a liberty interest in this context, Plaintiff must prove that his employer made statements that (1) placed a stigma on his reputation, (2) were public, (3) were made in conjunction with his dismissal, and (4) were false. Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). In such a situation, "the constitutional harm 'is not the defamation' itself; rather it is 'the denial of an opportunity to refute the public charge.'" Id. at 649 (quoting Cox v. N. Va. Transp. Comm'n, 551 F.2d 555, 558 (4th Cir. 1976)).

The Court holds that summary judgment is appropriate as to the Individual Defendants because Plaintiff has failed to

produce any evidence indicating the existence of a liberty
interest which entitles him to the protections of due process.
There is no evidence in the record demonstrating that Defendants
Field, Moses, and Fredericksen made any public disclosure of the
altercation or Plaintiff's non-renewal.  <u>See</u> Def. Mem. at 23 ¶
67 and Field Dep. at 84:19 – 85:14 (regarding Field); Def. Mem.
at 23 at ¶ 68 and Moses Dep. at 174:1 – 180:5 (regarding Moses);
Def. Mem. at 23 at ¶ 69 and 14:15 – 16:15 (regarding
Frederickson); Plaintiff's Dep. at 292:1 – 293:8 (regarding
all).  Plaintiff's only rebuttal is his assertion that the
principal of Gaithersburg High School told him over the phone
that "Ms. Rae Korade (Special Education Staffing Coordinator)
<u>could not release you</u>."[7]  Opp'n. at 11 (emphasis in original).
Plaintiff's assertion is not supported in any way by the record
and does not justify any reasonable inference implicating any of
the Individual Defendants.  In addition, Plaintiff suggests that
the "fact can potentially be brought out in court that the
defendants had been in contact with Montgomery County."  <u>Id.</u>  In
doing so, Plaintiff illustrates his obvious misunderstanding of
the burden he is required to meet in order to defeat summary
judgment; Plaintiff's opposition, not some future date "in
court," was the time to show the Court the evidence Plaintiff

---

[7] Plaintiff does not explain who Ms. Korade is or what school
system, if any, she works for.

has to support his claim.  Because Plaintiff has failed to do
so, Defendants Field, Moses, and Frederickson are entitled to
summary judgment.

Plaintiff's claim is slightly different as to Defendant
Cain although the end result is the same.  It is undisputed that
Cain did have a conversation about Plaintiff with Rodger
Daugherty of Somerset County Public Schools.  Def. Mem. at 21 ¶
62.  But, it is also undisputed that the only information Cain
provided to Mr. Daugherty was that "Mr. Williams had a physical
confrontation, and that he was not eligible for rehire."  ECF
No. 78-4 at 15.  While Plaintiff clearly disputes whether he
should have been disciplined for his involvement in the May 2007
altercation,[8] he does not dispute that the altercation occurred.

---

[8] On this point it seems appropriate to refer Plaintiff to the
final paragraph of the Supreme Court's opinion in Bishop v.
Wood, 426 U.S. 341, 349-50 (1976):

> The federal court is not the appropriate forum in
> which to review the multitude of personnel decisions
> that are made daily by public agencies.  We must accept
> the harsh fact that numerous individual mistakes are
> inevitable in the day-to-day administration of our
> affairs. The United States Constitution cannot
> feasibly be construed to require federal judicial
> review for every such error. In the absence of any
> claim that the public employer was motivated by a
> desire to curtail or to penalize the exercise of an
> employee's constitutionally protected rights, we must
> presume that official action was regular and, if
> erroneous, can best be corrected in other ways. The
> Due Process Clause of the Fourteenth Amendment is not
> a guarantee against incorrect or ill-advised personnel
> decisions.

Plaintiff's Dep. at 178-189; Opp'n at 4-5 ¶ 2.  Thus, there is "a complete failure of proof concerning an essential element of [Plaintiff's] case," namely, the falsity of the statement. Celotex Corp., 447 U.S. 317 at 322.  As a result Plaintiff is unable to show that a liberty interest was implicated by Cain's conduct and summary judgment in favor of Cain is appropriate on Plaintiff's due process claim.

### 2. Count VII – 42 U.S.C. § 1981

In Count VII Plaintiff alleges that the Individual Defendants are liable under § 1983 for violating the rights secured to him by 42 U.S.C. § 1981.[9]  Specifically, Plaintiff alleges that the Individual Defendants "each in their individual capacities, personally treated Plaintiff disparately due to his race, African-American, with respect to their investigation, suspension, non-renewal of his contract, and publication of expunged information and falsehoods."  Second Amend. Compl. at

---

[9] Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

20 ¶ 82.   Plaintiff's allegations thus relate both to the events

leading up to his non-renewal and the non-renewal itself, as

well as the difficulties he has had in finding another teaching

position.

Apparently relying on this Court's opinion on Defendants'

Motion to Dismiss, ECF No. 29 at 13, Defendants identify three

elements that a plaintiff must prove in a case premised on §

1981: (1) that the plaintiff is a member of a racial minority,

(2) that the defendant intended to discriminate against him on

the basis of race, and (3) that the discrimination concerns one

or more of the activities protected by § 1981.[10]   Intentional

discrimination can be proved by either direct evidence or

indirect evidence under the burden shifting scheme of McDonnell

---

[10] The Court notes that a more accurate statement of the elements
required to make out a claim under § 1981, in a case of
employment discrimination such as the one Plaintiff has alleged,
is probably found in Luy v. Baltimore Police Dept., 326 F. Supp.
2d 682 (D. Md. 2004), aff'd, 120 F. App'x 465 (4th Cir. 2005).
Specifically, Plaintiff must prove that "(1) he is a member of a
protected class; (2) his job performance was satisfactory; (3)
he suffered an adverse employment action; and (4) similarly
situated employees outside his protected class were treated more
favorably." Id. at 688; see also Carson v. Giant Food, Inc.,
187 F. Supp. 2d 462, 484 (D. Md. 2002) aff'd sub nom. Skipper v.
Giant Food Inc., 68 F. App'x 393 (4th Cir. 2003).   Because these
elements were not discussed by the parties in their briefing of
the instant motion, the Court will not devote the bulk of its
analysis to them.   It should be noted, however, that under this
standard, Plaintiff's claim fails for the same reason his Equal
Protection claim fails – he has provided no evidence that he was
treated differently from other similarly situated individuals
outside of his class.

Douglas Corp. v. Green, 411 U.S. 792 (1973).  Hawkins v.

PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000).

The Individual Defendants argue that they are entitled to

summary judgment because Plaintiff has failed to produce any

evidence of intentional discrimination.  Again, the undisputed

facts support Defendants' position.  Plaintiff has not produced

any direct evidence that the Individual Defendants intentionally

discriminated against him in their investigation of the May 2007

altercation, his eventual dismissal, or in dealings with any

prospective employers.  Moreover, Plaintiff has failed, under

McDonnell Douglas, to show that any of the legitimate reasons

for Defendants' actions relating to the investigation and his

dismissal, see Def. Mem. at 34-35 n. 19-21, were pretextual.

Again, while Plaintiff may not like the actions that were taken,

his disagreement in no way suggests that the Individual

Defendants intended to discriminate against him on account of

his race.

Finally, Plaintiff has failed to produce any evidence to

support his allegation that the Individual Defendants published

"expunged information and falsehoods" about him with the intent

to discriminate against him on account of his race.  As

discussed above, the only conversation between any of the

Individual Defendants and a prospective employer of Plaintiff

occurred between Cain and Mr. Daugherty of Somerset County

16

Public Schools.  Cain told Mr. Daugherty that Plaintiff had been involved in an altercation and was ineligible for rehire when Mr. Daugherty called Cain to inquire about Plaintiff's time in Wicomico County.  Cain Dep. at 135:6 – 137:10.  Nothing in the record suggests that the information provided was expunged, false or shared with an intent to discriminate against Plaintiff on account of his race.  Therefore, the Court will grant summary judgment in favor of the Individual Defendants on Count VII.

### B. Plaintiff's Claim Under the Maryland Declaration of Rights (Count VIII)

In Count VIII, Plaintiff alleges that Defendants "deprived Plaintiff of rights, privileges, and immunities guaranteed to Plaintiff under Articles 19 and 24 of the Maryland Declaration of Rights."[11]  Second Amend. Compl. at 21 ¶ 87.  The Court previously denied Defendants' Motion to Dismiss Count VIII as it relates to the Individual Defendants and the Board.  ECF No. 29 at 17.  The Individual Defendants have now moved for summary judgment on Count VIII on the ground that Articles 19 and 24 are

---

[11] Article 19 provides: "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land."

Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

read in pari materia with the Due Process Clause of the
Fourteenth Amendment and, thus, if they are entitled to summary
judgment on Count VI, they are entitled to summary judgment on
Count VIII as well.  The Board has moved for summary judgment on
Count VIII arguing that Plaintiff has produced "no evidentiary
support that the Board purposefully discriminated against
Plaintiff on the basis of race or that the Board deprived
Plaintiff of any due process."  Def. Mem. at 45 n.28.

The Court will grant summary judgment in favor of the
Individual Defendants for the reasons outlined above in the
discussion of Count VI because Articles 19 and 24 are read in
pari materia with the Due Process Clause of the Fourteenth
Amendment.  See Jackson v. Dackman Co., 956 A.2d 861, 873 (Md.
Ct. Spec. App. 2008) ("The 'law of the land' in Article 19 is
the same due process of law required by the fourteenth
amendment."); Doe v. Dept. of Public Safety and Corrections
Servs., 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009) ("[I]t is
well established that Article 24 [of the Maryland Declaration of
Rights] embodies the same equal protection concepts found in the
Fourteenth Amendment to the U.S. Constitution.").  As to the
Board, Plaintiff argues that he was denied due process by the
Board because he was "terminated ... without the defendants ever
speaking to any of the staff witnesses, or reviewing their
statements of the incident."  Opp'n. at 14 ¶ 22.  This argument,

however, reaches only the quality of process Plaintiff was given

and that issue, as noted above, is only reached after

determining that a protected interest existed at all. Sullivan,

526 U.S. at 59. Because Plaintiff has failed to make that

initial showing, the Court will grant summary judgment in the

Board's favor.

### C. Plaintiff's Claim for Defamation (Count I) and Tortious Interference With Prospective Advantage (Count III)

In Count I Plaintiff alleges that the Individual Defendants

defamed him by, inter alia, "publishing false information to

Plaintiff's prospective employers and others regarding an

incident that has been expunged from all records," Second Amend.

Compl. at 11 ¶ 39, "making false statements describing the

incident as a 'physical confrontation' with a student." Id. at

11 ¶ 41. The elements of defamation under Maryland law when the

plaintiff is not a public figure are:

> (1) the defendant made a defamatory
> communication, i.e., that he communicated a
> statement tending to expose the plaintiff to
> public scorn, hatred, contempt, or ridicule to a
> third person who reasonably recognized the
> statement to be defamatory; (2) that the
> statement was false; (3) that the defendant was
> at fault in communicating the statement; and (4)
> that the plaintiff suffered harm.

Thacker v. City of Hyattsville, 762 A.2d 172, 196 (Md. Ct. Spec.

App. 2000) (quoting Agora, Inc. v. Axxess, Inc., 90 F. Supp. 2d

697, 701 (D. Md. 2000)).

In Count III Plaintiff alleges that the Individual Defendants tortiously interfered with his prospective advantage. Specifically, Plaintiff alleges that Individual Defendants, "took efforts to ensure that no other Maryland county would employ Plaintiff by spreading false information regarding his record and discussing expunged information with potential employers.  The elements of tortious interference under Maryland law are:

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

Natural Design, Inc. v. Rouse Co., 485 A.2d 663, 675 (Md. 1984) (quoting Wilner v. Silverman, 71 A. 962, 964 (Md. 1909)).

The Individual Defendants' arguments for summary judgment on these counts are essentially the same.  Defendants Frederickson, Moses, and Field argue that they are entitled to summary judgment because Plaintiff has failed to produce evidence that they have had any contact with Plaintiff's prospective employers.  Defendant Cain argues that he is entitled to summary judgment because, even if his statement to Mr. Daugherty was a defamatory statement, the information communicated was not false.  Furthermore, Defendant Cain argues on Count III that Plaintiff has failed to produce any evidence

that Cain acted with malice in disclosing the altercation and
Plaintiff's ineligibility for rehiring to Mr. Daugherty. The
Court has thoroughly addressed these arguments as well as
Plaintiff's response in its Discussion of Plaintiff's Count VI.
For those same reasons, the Court will grant summary judgment in
favor of the Individual Defendants on Count I and Count III.

### D. Plaintiff's Claim for Negligence (Count V)

In Count V Plaintiff alleges negligence against the Board.
Specifically, Plaintiff alleges that the Board is "vicariously
liable for the actions of the [Individual] Defendants" to the
extent that the Individual Defendants were negligent in
communicating expunged information about the altercation to
prospective employers and those communications caused him to be
unable to find employment. Second Amend. Compl. at 17 ¶ 70.
The elements that a plaintiff must prove in a claim for
negligence in Maryland are: "(1) that the defendant was under a
duty to protect the plaintiff from injury, (2) that the
defendant breached that duty, (3) that the plaintiff suffered
actual injury or loss, and (4) that the loss or injury
proximately resulted from the defendant's breach of the duty."
Dehn v. Edgecombe, 865 A.2d 603, 611 (Md. 2005). The Board
argues that it is entitled to summary judgment on Count V
because there is no evidence that any of the Individual
Defendants communicated information about the altercation with

any of Plaintiff's prospective employers save for the single conversation between Cain and Mr. Daugherty.  Assuming, as the Board seems to do in its memorandum, that the Individual Defendants owed Plaintiff some duty not to disclose expunged information relating to the altercation, the Board's argument is clearly correct.  None of the Defendants other than Cain had any conversations about Plaintiff with any of Plaintiff's prospective employers.  Moreover, as discussed above, Cain's conversation with Mr. Daugherty consisted only of the fact that Plaintiff had been involved in an altercation with a student and the fact that Plaintiff was ineligible for rehire, neither of which related to Plaintiff's expunged criminal charges.  As such, Plaintiff has presented no evidence that any of the Individual Defendants breached the duty that Plaintiff claims he was owed, and thus the Board cannot be held vicariously liable.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be GRANTED.  A separate order will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

October 1, 2012.